## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JOHN NIESSING, individually, and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:24-cv-8266** |
| **LONG ISLAND PLASTIC SURGICAL GROUP, P.C.,** | |
| **Defendant.** | |

## LONG ISLAND PLASTIC SURGICAL GROUP, P.C.'S, NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Long Island Plastic Surgical Group, P.C. ("Defendant" or "LIPSG"), by and through its counsel, hereby removes the above-captioned action from the New York Supreme Court, Nassau County to the United State District Court for the Eastern District of New York.

As set forth below, this case meets, *inter alia*, all of the requirements for original jurisdiction and removal under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), and is timely and properly removed by the filing of this Notice.

### NATURE OF REMOVED ACTION

1. On October 21, 2024, Plaintiff John Niessing ("Plaintiff") filed his Class Action Complaint New York Supreme Court, Nassau County, asserting claims for (i) negligence, (ii) breach of implied contract, (iii) unjust enrichment, and (iv) invasion of privacy. *See* Complaint ¶¶ 99-149 (attached as **Exhibit 1**).

2. Plaintiff seeks to represent a nationwide putative class of "[a]ll persons in the United States whose Private Information was compromised in the Data Breach." *Id.* ¶ 90. In the alternative, Plaintiffs seeks to represent a New York subclass, consisting of "[a]ll persons who are residents of

the State of New York whose Private Information was compromised in the Data Breach (the "New York Subclass")." *Id*. ¶ 91.

2.    Plaintiff seeks injunctive relief, compensatory, consequential, and general damages, statutory, punitive, and attorneys' fees and costs. *See generally* Complaint.

3.    LIPSG is a New York professional corporation with its headquarters at 999 Franklin Avenue in Garden City, New York 11530. LIPSG provides health care services including reconstructive and cosmetic surgery.

4.    Between January 4, 2024 and January 8, 2024, LIPSG identified a cybersecurity ransomware incident (the "Incident") that impacted its systems. Seven putative class actions premised on this incident have now been filed, including this action, three additional actions in state court, and three cases filed directly in federal court under 28 U.S.C. § 1332(d) (as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 199 Stat. 4). *See Baum v. Long Island Plastic Surgical Group, P.C.*, Index No. 618588/2024 (N.Y. Sup. Ct., Nassau County); *Auli v. Long Island Plastic Surgical Group, P.C.*, Index No. 618267/2024 (N.Y. Sup. Ct., Nassau County), *removed on November 20, 2024, see* Case No. 2:24-cv-08086 (E.D.N.Y.); *Fitzsimons v. Long Island Plastic Surgical Group, PC*, Index No. 619353/2024 (N.Y. Sup. Ct., Nassau County); *Kakish v. Long Island Plastic Surgical Group, P.C.*, No. 2:24-cv-07341-ST (E.D.N.Y.); *Waiters v. Long Island Plastic Surgical Group, P.C.*, No. 2:24-cv-07635-NJC-LGD (E.D.N.Y.); *Parpounas v. Long Island Plastic Surgical Group, P.C.*, No. 2:24-cv-07557-NJC-JMW (E.D.N.Y.).

5.    Defendants dispute the facts and claims alleged in the Class Action Complaint and reserve all procedural, substantive, and other defenses, arguments, and claims available in response to the Class Action Complaint.

6.      Pursuant to 28 U.S.C. § 1446(a), a copy of the Class Action Complaint is attached as **Exhibit 1**. LIPSG was served with the Complaint on October 28, 2024. A copy of the affirmation of service is attached as **Exhibit 2**.

## BASES FOR REMOVAL

**I.    Removal Of This Putative Class Action Is Proper Pursuant To The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).**

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). CAFA grants federal courts original jurisdiction over claims pleaded as proposed class actions whenever: (1) "any member of a [putative] class of plaintiffs is a citizen of a State different from any defendant," *id.* § 1332(d)(2)(A); (2) "the number of members of all proposed plaintiff classes in the aggregate is" not less than 100, *id.* § 1332(d)(5)(B); and (3) "the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs," *id.* § 1332(d)(2). The Supreme Court has emphasized that "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee Basis Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (cleaned up).

8.      Defendant denies that Plaintiff has defined a proper class, that class treatment is proper, or that any class could be certified in this action, and reserves all rights to pursue these defenses to certification as necessary at the appropriate time. Nevertheless, this lawsuit as pleaded satisfies CAFA's definition of a "class action" because Plaintiff explicitly brings the State Court action pursuant to N.Y. C.P.L.R. 901 *et seq.* (*see* Compl. ¶ 88), which is New York's analog to Federal Rule of Civil Procedure 23. *See* 28 U.S.C. § 1332(d)(1)(B) ("[T]he term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State

statute or rule of judicial procedure . . . ."). Also, Plaintiff captioned his pleading "on behalf of all others similarly situated" as a "class action complaint" and seeks to represent a putative class in this litigation (Compl. ¶¶ 89-97). *See* 28 U.S.C. § 1332(d)(1)(B).

9.       Venue lies in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(a) and 1441(a) because the Complaint was filed in this District. Pursuant to 28 U.S.C. § 1441(a), this case may properly be removed to the Eastern District of New York because Plaintiff filed this case in the New York Supreme Court, Nassau County.

**A.  The Parties Are Minimally Diverse.**

10.       CAFA's minimal diversity requirement is satisfied in this action because at least one putative class member is a citizen of a state other than New York. 28 U.S.C. § 1332(d)(2).

11.       CAFA requires that the parties be only "minimally diverse." *Dart*, 574 U.S. at 84–85. Federal jurisdiction exists in this action if just one member of the putative class is "a citizen of a State different from [the] defendant." 28 U.S.C. § 1332(d)(2)(A); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 59–60 (2d Cir. 2016) (diversity of citizenship necessary to satisfy CAFA pursuant to § 1332(d)(2) exists when "minimal diversity" is satisfied, i.e., "the existence of at least *one* party who is diverse in citizenship from one party on the other side of the case" (quoting *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 577 n.6 (2004))).

12.       "CAFA minimal diversity jurisdiction may be based on a removing party's 'information and belief.'" *Kosieradzki v. Eversource Serv. Energy Co.*, No. 3:20-cv-01338, 2021 WL 1227571, at *7 (D. Conn. Apr. 1, 2021) (quoting *Ehrman v. Cox Commc'ns., Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019) ("Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the pleading requirements for removal' and to clarify that courts should 'apply the same liberal rules to removal allegations that are applied to

other matters of pleading; therefore, a party's allegation of minimal diversity may be based on 'information and belief' and the pleading 'need not contain evidentiary submissions.'" (cleaned up))).

13.     As a professional corporation incorporated under the laws of New York with its headquarters and principal place of business in New York, LIPSG is a citizen of New York for purposes of determining jurisdiction. 28 U.S.C. § 1332(c)(1); *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87, 89 (2d Cir. 1983) (a professional corporation, "[f]or purposes of removal under section 1441(a) . . . is deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business").

14.     Plaintiff alleges a nationwide putative class comprising of "[a]ll persons in the United States whose Private Information was compromised in the Data Breach." Compl. ¶ 90.

15.     LIPSG is informed and believes, and on that basis alleges, that individuals affected by the alleged data breach are domiciled in states other than New York.  LIPSG has offices in Connecticut where it provides health care services to individuals who are citizens of states other than New York, which supports LIPSG's allegation that individuals affected by the data breach are domiciled in states other than New York.  Moreover, LIPSG provided notice to the Texas Attorney General, indicating that 572 Texans were impacted by the breach. *See* https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage.

16.     For minimal diversity to exist, one plaintiff must be diverse from one defendant. 28 U.S.C. § 1332(d)(2)(A). Here, members of the putative class are not citizens of New York, and therefore diverse from LIPSG. The minimal diversity requirement is therefore satisfied. *See* 28 U.S.C. § 1332(d)(2).

**B. Plaintiff Alleges A Putative Class Of More Than 100 Members.**

17.    Defendant denies that Plaintiff has defined a proper class, that class treatment is proper, and that any class could be certified in this action. Nevertheless, the putative class as pleaded facially meets CAFA's threshold of at least 100 putative class members. *See* 28 U.S.C. § 1332(d)(5)(B).

18.    In establishing federal jurisdiction under CAFA, a defendant may rely on allegations in the complaint to demonstrate a class size of more than 100 members. *See Miller v. Syracuse Univ.*, 662 F. Supp. 3d 338, 358 (N.D.N.Y. 2023) (finding numerosity prong satisfied where the plaintiff alleged that approximately 9,800 individuals were impacted by the data breach).

19.    Plaintiff alleges that "the number of affected individuals is estimated to be 161,707." Compl. ¶ 92; *see also id*. ¶ 24.

20.    The proposed class therefore exceeds CAFA's threshold of 100 class members. 28 U.S.C. § 1332(d)(5)(B).

**C. The Complaint Places More Than $5 Million in Controversy.**

21.    Defendant concedes neither liability on Plaintiff's claims nor the propriety of the relief he seeks, and reserves all rights with respect to all issues presented by the Class Action Complaint, including but not limited to venue, liability, causation, standing, damages, and class certification.

22.    Nevertheless, for purposes of assessing the jurisdictional amount, what matters is solely the amount potentially in controversy as alleged in the pleadings and materials submitted by the parties, and not whether a plaintiff's claims or alleged damages have any merit (which Plaintiff's do not). *Agoliati v. Block 856 Lot 300 LLC*, No. 19-cv-05477, 2023 WL 8618234 (E.D.N.Y. Dec. 13, 2023) (adopting ruling that "the Court does not reach the merits of" the "claim

(or whether there may be factual defenses to it) in evaluating whether Plaintiffs' amended complaint has alleged the requisite amount in controversy"); *see also Sarfraz v. Vohra Health Servs., PA*, 663 F. Supp. 2d 147, 149 (E.D.N.Y. 2009) ("[A]ffirmative 'defenses on the merits' may not be used to whittle down the amount in controversy." (citation omitted)). To be clear, Defendant expressly reserves the right to dispute that Plaintiff or any other member of the putative class has incurred any cognizable injury or measurable damages in any form.

23. The amount in controversy is determined by "adding up the value of the claim of each person who falls within the definition of [the] proposed class and determin[ing] whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). No evidence is necessary: A "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89. And because the Complaint does not specify an amount sought, Defendant's "amount-in-controversy allegation should be accepted." *Id.* at 87. "This burden is hardly onerous" and "the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Andersen v. Walmart Stores, Inc.*, No. 16-cv-6488 CJS, 2017 WL 661188, at *4 (W.D.N.Y. Feb. 17, 2017) (citation omitted).

24. Here, CAFA's $5 million amount-in-controversy requirement is satisfied.

25. Plaintiff seeks to represent a nationwide class of "[a]ll persons in the United States whose Private Information was compromised in the Data Breach." *Id.* ¶ 90.

26. Plaintiff asserts that each of the putative class members were damaged, including: "(a) Theft of Private Information; (b) Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach; (c) Damages arising from the inability to use accounts

that may have been compromised during the Data Breach; (d) Costs associated with time spent to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite Defendant's delay in disseminating notice in accordance with state law; (e) The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and (f) The loss of Plaintiff's and Class members' privacy." Compl. ¶ 78; *see also id.* ¶ 105 (alleging similar damages). Plaintiff further alleges that the putative class members "are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct." *Id.* ¶ 141. Plaintiff also seeks to recover punitive damages. *Id.* at 46 (Prayer for Relief).

27.     With respect to out-of-pocket losses, Plaintiff further asserts that "[v]ictims of medical identity theft spend an average of $13,500 to resolve problems arising from medical identity theft." Compl. ¶ 38. Given that Plaintiff seeks to represent a class of 161,070 individuals, if each suffered the average amount alleged by Plaintiff, the amount in controversy would well exceed $5,000,000 (161,070 x $13,500 = $2,174,445,000). Indeed, the amount in controversy would exceed $5,000,000 if only 370 members suffered the average cost alleged by Plaintiff (371

x $13,500 = $5,008,500). *See Cohen v. Ne. Radiology, P.C.*, No. 20-cv-1202, 2021 WL 293123, at *3 (S.D.N.Y. Jan. 28, 2021) (finding amount in controversy satisfied where Plaintiff alleged that he suffered $10,000 in fraudulent charges as a result of the data breach because there as a "reasonable probability" that the aggregate claims are in excess of $5 million given a 1.2 million class).

28.    Moreover, Plaintiff also asserts that class members "purchas[ed] credit monitoring and identity theft protection." Compl. ¶ 78.  Based on publicly available information, LIPSG alleges that credit monitoring services may be purchased from the three major credit reporting agencies—Equifax, Experian, and TransUnion—ranging from $19.95 to $29.95 per month.[1]  If only 20,887 class members (1/8 of the class) purchased an additional year of credit monitoring at $19.95, the amount in controversy would be satisfied (20,886 x ($19.95 x 12) = $5,000,347.80).

29.    Additionally, the *Kakish*, *Waiters*, and *Parpounas* cases—which arise from the same events as this case—each specifically assert that the amount in controversy in those actions exceeds $5 million. *See Kakish* Complaint ¶ 10, ECF No. 1, No. 2:24-cv-07341-ST; *Waiters* Complaint ¶ 14, ECF No. 1, No. 2:24-cv-07635-NJC-LGD; *Parpounas* Complaint ¶ 18, ECF No. 1, No. 2:24-cv-07557-NJC-JMW (E.D.N.Y.). The Court may consider a plaintiff's pleaded damages of $5 million in a different class action with the same facts and alleged injuries as evidence that the amount-in-controversy threshold has been met here. *See, e.g.*, *Composite Co. v. Am. Int'l Grp., Inc.*, 988 F. Supp. 2d 61, 74-75 (D. Mass. 2013) (considering a prior, "nearly

---

[1] Experian, *Identity protection plans*, https://www.experian.com/protection/compare-identity-theft-products (last visited Nov. 15, 2024); Equifax, *Compare our Premium products*, https://www.equifax.com/personal/products/credit/monitoring-product-comparison (last visited Nov. 15, 2024); TransUnion, *Credit Monitoring Services*, https://www.transunion.com/credit-monitoring?atvy=%7B%22258139%22%3A%22Experience+B%22%7D (last visited Nov. 15, 2024).

identical" complaint "that contains an explicit amount-in-controversy estimate exceeding $5 million").

30.     Accordingly, based on Plaintiff's claims as pleaded, CAFA's amount in controversy of $5 million is satisfied in this action. *See Dart*, 574 U.S. at 87.

* * * * * *

31.     This action meets all the requirements of CAFA: (1) minimal diversity under 28 U.S.C. § 1332(d)(2)(A); (2) a putative class size of 100 or more members under 28 U.S.C. § 1332(d)(5)(B); and (3) an amount in controversy of more than $5 million under 28 U.S.C. § 1332(d)(2). This Court therefore has jurisdiction pursuant to 28 U.S.C. § 1332(d).

## COMPLIANCE WITH STATUTORY REQUIREMENTS

32.     Defendant's removal of this action is timely under 28 U.S.C. § 1446(b)(1) because Defendant is removing this matter within 30 days of their receipt of the Class Action Complaint. *See* Affidavit of Service (attached as **Exhibit 2**).

33.     In accordance with 28 U.S.C. § 1446(a), a true and correct copy of the Class Action Complaint is attached hereto as **Exhibit 1**. Defendant has not been served with nor has Defendant served any other process, pleadings, or orders in this action.

34.     In accordance with 28 U.S.C. § 1446(d), Defendant promptly will provide written notice of removal of the State Court action to Plaintiff, and promptly will file a copy of this Notice of Removal with the Clerk of Court for the New York Supreme Court, Nassau County.

35.     Defendant's disclosures under Rule 7.1 are listed in the Civil Cover Sheet filed contemporaneously with this Notice of Removal.

**<u>GENERAL STATEMENT / NO WAIVER OF RIGHTS</u>**

36.    In alleging the amount-in-controversy for purposes of removal, Defendant does not concede in any way that the allegations in the Class Action Complaint are accurate, that Defendant committed any of the violations of law alleged in the Complaint, that Plaintiff has asserted claims upon which relief can be granted, or that recovery of any of the amounts sought is authorized or appropriate. Nor does Defendant concede that Plaintiff's class is properly defined or that class certification is appropriate. Finally, this Notice of Removal does not waive any objections Defendant has as to personal jurisdiction, or any and all of the other claims or defenses by Defendant, all of which are expressly preserved herein.

WHEREFORE, Defendant hereby respectfully request that this case proceed in this Court as an action properly removed from the New York Supreme Court, Nassau County.

Dated: November 27, 2024

/s/ *Leah S. Murphy*
Leah S. Murphy
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: 212-326-3425
Fax: 212-755-7306
leahmurphy@jonesday.com

*Attorneys for Defendant Long Island Plastic Surgical Group, P.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2024, I electronically filed the foregoing Notice of

Removal with the Clerk of the Court using the CM/ECF system. I also certify that I served a

copy of the foregoing Notice of Removal by email and mail to Plaintiff's counsel as follows:

Vicki J. Maniatis
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
405 East 50th Street
New York, NY 10022
Telephone: (516) 491-4665
vmaniatis@milberg.com

David K. Lietz
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
5335 Wisconsin Avenue NW
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

Daniel O. Herrera
Nickolas J. Hagman
CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP
135 S. LaSalle, Suite 3210
Chicago, IL 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

*Attorneys for Plaintiff and the Putative
Class*

/s/ Leah S. Murphy
Leah S. Murphy